**CONSTITUTIONAL LAW**

ESTABLISHMENT CLAUSE – BUDGETARY ADMINISTRATION – STATE FUNDS MAY BE EXPENDED FOR TRANSPORTATION SERVICES IN CONNECTION WITH CONVENTION OF RELIGIOUS ORGANIZATION IN BALTIMORE CITY

May 26, 2006

*The Honorable Cecilia Januszkiewicz*
*Secretary, Department of Budget & Management*

You have asked for our opinion about the expenditure of State funds in connection with the National Baptist Congress of Christian Education, a convention to be held next month in Baltimore. You have requested this opinion to comply with a restriction in the budget bill that conditioned the expenditure of funds appropriated for that purpose on an opinion from the Attorney General that the funding is constitutional. You have indicated that the funds will be used for transportation services and have also provided certain information about the controls that will be placed on the use of the funds.

In our opinion, it is possible for the State to expend the appropriation without offending the Establishment Clause. In particular, funds may be expended for the specific purpose you have identified – transportation services – under a grant agreement that restricts the use of the funds and imposes appropriate controls. This Office is available to review the constitutionality of other proposed uses of the funds with your staff and other State officials and to supplement this opinion as necessary.

**I**

**Background**

*A.     Budget Condition*

During the 2006 Session of the General Assembly, the Governor submitted a supplemental budget that included a

deficiency appropriation of $150,000 for Fiscal Year 2006 for the Office of Tourism Development of the Department of Business and Economic Development for the following purpose: "to provide funds for the National Congress of Christian Education to be held in Baltimore on June 19-23, 2006." Chapter 216, Laws of Maryland 2006, Item 10 in second supplemental budget amending program T00G00.02. The General Assembly placed the following condition on the appropriation: "provided that these funds are contingent upon an opinion from the Office of the Attorney General confirming that the funding is constitutional." *Id.*

To comply with the budget condition, you have requested an opinion concerning the constitutionality of this appropriation.[1]

### B.    *Proposed Expenditures*

Founded in 1886, the National Baptist Convention USA, Inc. ("Convention")[2] states that it is the nation's oldest and largest African American religious organization, with an estimated membership of 7.5 million individuals. *See* <www.nationalbaptist.com>. Among other things, the Convention holds its major educational conference, called the National Baptist Congress of Christian Education ("NBCCE"), each year during the third week of June. *Id.* It is the largest of the four annual national meetings of the Convention; in contrast to some of the other annual meetings, attendees at the NBCCE may or may not belong to the Convention or to churches that are members of the Convention. *Id.*

You state that the 2006 NBCCE will be the largest convention that the State of Maryland has ever hosted. It is expected that 50,000 people will attend its meetings at the Baltimore Convention Center

---

[1] You initially requested the opinion on May 4, 2006, but did not include information concerning how the funds would be spent other than that they would be for "secular services and purposes." On May 5, 2006, we requested additional information concerning the criteria under which this particular convention was selected for a subsidy, how the appropriation would actually be spent, and what controls would be employed to ensure that the funds were used for specified purposes. You responded on May 19, 2006, with the information outlined in the text.

[2] In this opinion we use the capitalized term "Convention" to refer to the religious organization and the lower case "convention" to refer to its meeting in Baltimore.

and other sites. This will be the first time that the entire Baltimore Convention Center will be used by a single group. Given the size of the convention, attendees will have to be housed at various locations throughout the region.

You state that NBCCE is a significant tourism development opportunity for the State because the attendees will not only occupy thousands of hotel rooms in the region but also "visit Maryland tourist attractions, dine in Maryland restaurants and shop in Maryland stores." You indicate that a successful convention of this size will generate visitor-related expenditures of more than $40 million.

You state that the appropriated funds will be used in part to support "the transportation costs of safely and efficiently moving 50,000 people throughout the region." According to your letter, the State Department of Business and Economic Development will assign two staff members to the convention to promote Maryland and to ensure that the funds are properly utilized. In addition, the funds will be provided pursuant to a standard grant agreement that will limit the use of the funds to the permitted uses and will require documentation of expenditures.

## II

### Analysis

### A.    *Constitutional Test*

The constitutional question raised by the budget condition is whether the appropriation of State funds for a convention of a religious organization offends the Establishment Clause of the federal constitution.[3] To assess whether such government aid is constitutional, the courts apply an analysis first developed by the Supreme Court in *Lemon v. Kurtzman,* 403 U.S. 602 (1971) and later modified in *Agostini v. Felton*, 521 U.S. 203 (1997). Under this approach, a court first determines whether the program has a secular

---

[3] The Establishment Clause provides that "Congress shall make no law respecting an establishment of religion." United States Constitution, First Amendment. The First Amendment applies to the states through the Fourteenth Amendment to the federal constitution. *See Everson v. Board of Education*, 330 U.S. 1, 8 (1947).

purpose. The court then looks to whether the program has the effect of advancing religion. *Agostini*, 521 U.S. at 234. To determine whether government aid has the effect of advancing religion, courts consider whether the aid program: (1) results in governmental indoctrination; (2) defines its recipients by reference to religion; or (3) creates an excessive entanglement with religion. *Id.* These criteria would apply to the assessment of a grant to a religious or faith-based organization. *See* 88 *Opinions of the Attorney General* ___ (2003) [Opinion No. 03-017 (October 27, 2003)].

In some contexts, a court may also inquire into whether the organization or institution that is receiving the aid is "pervasively sectarian." However, the Supreme Court has downplayed the significance of that criterion in its recent decisions and has placed greater emphasis on whether the aid is for a secular purpose and is distributed on the basis of neutral criteria that do not favor religious institutions. *See Mitchell v. Helms*, 530 U.S. 793 (2000); *see also* 88 *Opinions of the Attorney General* ___ (2003) [Opinion No. 03-006 (March 17, 2003)].

### B.    *Whether the Aid Has a Secular Purpose*

The NBCCE will swell the population of the Baltimore region by 50,000 people during one week in June. The convention can thus be expected to strain the public services that local and State government normally provide for both residents and visitors, such as transportation, sanitation, and security. Supplementing the existing public assets that support such services in order to cope with a substantial, though temporary, increase in the demand for those services is surely a secular purpose.

In addition, as you have outlined in your letters requesting this opinion, the potential economic benefits to the State are significant if, as you indicate, visitors are expected to inject $40 million into the local economy during a brief period. The region's success in managing the challenges to public services posed by such a large convention may help attract other conventions of equal magnitude, with similar positive effects on the local economy. The appropriation may also serve this secular purpose.

### C.    *Whether the Aid Has the Effect of Advancing Religion*

"[S]pecial Establishment Clause dangers exist when money is given to religious ... entities directly rather than ... indirectly." *Mitchell*, 530 U.S. at 818-19 (Thomas, J.). Grant funds received

directly from the government may not be used for the purpose of conducting religious activities. *See* 88 *Opinions of the Attorney General* ___ (2003) [Opinion No. 03-017 (October 27, 2003)]. Thus, in order to assess whether the aid has the effect of advancing religion, one must analyze the intended use of the government aid.

For example, in *Gilfillan v. City of Philadelphia*, 637 F.2d 924 (3d Cir. 1980), *cert. denied*, 451 U.S. 987 (1981), the Third Circuit held that the expenditure of city funds to construct a platform in a public park in Philadelphia in connection with a papal visit and mass violated the Establishment Clause. The court noted that the use of the platform for a liturgical service rendered the religious effect of the aid "both plain and primary." 637 F.2d at 931. By contrast, in *O'Hair v. Andrus*, 613 F.2d 931 (D.C.Cir. 1979), the District of Columbia Circuit held that government expenditures for a similar papal visit to Washington, D.C., did not violate the Establishment Clause. In that case, the expenditures were for police, sanitation, and utilities on the National Mall. The court noted that similar services would be provided for any large gathering on the Mall, regardless of whether the attendees were adherents of a particular religion, and that the church had financed the construction of a platform for the religious service. 613 F.2d at 934-35. The court concluded that "[p]rovision of police, sanitation and related public services is a legitimate function of government and not an 'establishment' of religion." *Id*. at 936.

You have indicated that at least part of the State funds will be used to provide transportation services for the visitors to the convention. The provision of transportation services may ensure that convention visitors will reach their destination more quickly and more safely, but it cannot be characterized as governmental indoctrination any more than other subsidized public transportation systems that allow residents and visitors to attend religious services.[4] Nor does the provision of such services "creat[e] a financial incentive to undertake religious indoctrination." *Agostini*, 521 U.S. at 231.

The transportation services will be provided to convention visitors, many of whom, given the nature of the convention, are

---

[4] Of course, as noted above, State funds may not be used for the purpose of conducting religious activities. For example, a vehicle used to transport attendees and supported by a State subsidy could not itself be a venue for religious services or organized proselytization.

likely to be members of a particular religious denomination. However, access to subsidized transportation services is not restricted to members of a particular sect. Your letter indicates that similar aid would be offered to any convention of similar size and economic impact which, due to its size, was forced to lodge attendees throughout the metropolitan area.[5] *See Mitchell v. Helms*, 530 U.S. 793, 809 (2000) ("If the religious, irreligious, and areligious are all alike eligible for governmental aid, no one would conclude that any indoctrination ... has been done at the behest of the government.").

Finally, given that the funds will be used to provide a service analogous to public transportation services, there should be little possibility for excessive entanglement of the religious aspects of the convention and the State aid. You have stated that the State will ensure that the funds will be used for the intended purpose by requiring the NBCCE to enter into a grant agreement that restricts the use of the funds to specific secular purposes and that requires provision of receipts and other documentation demonstrating compliance with the grant's terms. *See Bowen v. Kendrick*, 487 U.S. 589, 614-16 (1988) (even though federal statute lacked provision explicitly limiting government grants to secular purposes, grants to religious organizations under that law would not necessarily advance religion as use of grants could be monitored without excessive entanglement of government and religious organizations).

In our view, such aid is not unlike the basic public services provided for the papal visit that the D.C. Circuit found acceptable in *O'Hair v. Andrus*. It is also notable that the Supreme Court has long approved the use of government funds to provide transportation services for students attending religious-affiliated schools. *Everson v. Board of Education*, 330 U.S. 1 (1947).

---

[5] In a prior opinion we cautioned that "the funding of a single faith-based organization, presumably selected by the government, would raise issues of government endorsement of one religious group." 88 *Opinions of the Attorney General* ___ (2003) [Opinion No. 03-017 (October 27, 2003)] slip op. at p. 9.

## III

## Conclusion

In our opinion, it is possible for the State to expend the appropriation without offending the Establishment Clause. In particular, funds may be expended for the specific purpose you have identified – transportation services –  under a grant agreement that restricts the use of the funds and imposes appropriate controls.

You have asked for guidance on other permissible uses of the appropriated funds. Because we are not involved in the arrangements for this convention and do not know the precise impact it will have on local services, we cannot speculate as to suitable uses of the State aid appropriated in the budget bill. This Office is available to review the constitutionality of other  proposed uses of the funds with your staff and other State officials and to supplement this opinion as necessary.

J. Joseph Curran, Jr.
*Attorney General*

Robert N. McDonald
*Chief Counsel*
  *Opinions and Advice*

*Editor's Note:*

After this opinion was issued, the Department of Budget and Management inquired about other possible uses of the funds that were the subject of this opinion. The Attorney General's Office responded to that inquiry with the following letter:

**J. Joseph Curran, Jr.**
**Attorney General**



**Donna Hill Staton**
**Maureen M. Dove**
**Deputy Attorneys General**

# State of Maryland
# Office of the Attorney General

June 9, 2006

The Honorable John M. Wasilisin
Deputy Secretary
Department of Budget and Management
45 Calvert Street
Annapolis, Maryland  21401-1907

Dear Secretary Wasilisin:

You have requested additional advice concerning permissible uses of funds appropriated in the Fiscal Year 2007 budget in connection with the National Baptist Congress of Christian Education ("NBCCE") in Baltimore City during June 19-23, 2006. The Legislature  conditioned the expenditure of those funds on "an opinion of the Office of the Attorney General that the funding is constitutional."

Because the NBCCE is a religious education conference of a religious organization,[6] the expenditure of State funds in connection with the NBCCE raises obvious concerns under the Establishment Clause of the federal Constitution.  On May 26, 2006, this Office issued an opinion setting forth the basic analysis under the Establishment Clause.  91 *Opinions of the Attorney General* 118

---

[6] The NBCCE is one of a number of annual meetings of the National Baptist Convention USA, Inc.

(2006).  This letter supplements that opinion and addresses the particular items described in your letter.

### Constitutional Test

Without restating the full analysis set forth in the recent opinion, the constitutional test involves an assessment (1) whether the expenditure has a secular purpose and (2) whether the State aid has the effect of advancing religion.  To determine whether government aid has the effect of advancing religion, courts consider whether the program: (1) results in governmental indoctrination; (2) defines its recipients by reference to religion; or (3) creates an excessive entanglement with religion.  In applying this test in recent years, the Supreme Court has sometimes applied a neutrality principle – *i.e.*, whether a government program that benefits a religious organization is provided to all on the basis of the same neutral criteria.

The prior opinion concluded that the use of the appropriated funds for transportation services, with certain restrictions and controls, met the constitutional test.  You have now identified six other potential uses of the funds.  As an initial matter, there is a significant distinction between the transportation services that were the subject of the prior opinion and the items outlined in your recent letter.  With respect to the secular purpose of the expenditure, the prior opinion reasoned that the unprecedented size of this convention could be expected to strain public services in the Baltimore region, which could justify the expenditure of public funds to support services such as transportation, sanitation, and security.  As an ancillary benefit, such expenditures might also attract future conventions of similar size. Unlike those types of services, most of the items described in your recent letter do not relate to traditional public services that could be stressed by the unique size of this convention.   In assessing whether these items serve a secular purpose or have the effect of advancing religion, a court would likely look to whether the State subsidizes similar items for other conventions in the State.  Otherwise, the State aid could be seen as favoring religion.

### Proposed Expenditures

(1) *Foster Parent and Child Event*.  You indicate that the local Department of Social Services will be sponsoring an event the weekend before the convention officially begins to educate and encourage adults to become adoptive and foster care parents for

needy children. The event, which is titled "It's About the Children," is being co-sponsored and promoted by NBCCE organizers. The event will be held in Carroll Park in Baltimore City and will be open to the general public. You indicate that part of the appropriation would be used to provide port-a-pots, stages, tables and chairs, booths, walkie-talkies, speciality items for recognized foster parents, toys and prizes for children, and staff assisting with the event. You state that the program will consist of greetings from local officials and human services representatives and will provide foster care and adoptive program awareness and fun activities for children.

I understand that local departments of social services periodically hold similar events to recognize successful foster parents, to encourage other adults to fill this need, and to allow prospective parents to meet children in need of an adoptive home in an informal setting. While faith-based organizations and churches often provide volunteers and encourage their members to respond to this need, the event is designed to serve the secular purpose of finding foster parents for these children. I have been provided with a flyer for the event which notes the participation of faith-based organizations, but which is entirely secular in content. It is my understanding that these events are secular in nature, do not involve the conduct of religious services, and do not promote religion in general or any particular denomination. The expenditures that you have identified are related to sanitation and the logistics of the event that the State might otherwise fund through the local department of social services.[7] Assuming that this event is conducted in the usual fashion, State funds may be expended for these purposes without offending the Establishment Clause.

(2) *Souvenir Journal*. You indicate that it has been suggested that State funds could be used to defray the cost of printing the souvenir journal for the convention. Apparently, 5,000 copies of the journal are to be printed to be available at the convention. You state that the journal will include greetings from various officials, the program agenda, lists of various committees, and ads from

---

[7] There is a reference in your letter to payments for "staff." I assume that this refers to payments for State staff time or individuals hired by the State on a temporary basis to perform functions that the State would normally provide at such an event. Also, I assume that the "specialty items" mentioned in your letter do not contain religious symbols or convey sectarian religious sentiments.

businesses and other organizations.[8]  You also state that this program will be available to the general public.

Although I have not been given a copy of the full journal, I have reviewed a sampling of the introductory pages and other excerpts.  They convey various religious sentiments from clergy who hold positions with the NBCCE and its sponsoring organizations.  You indicate that the journal includes, as one might expect, the program of the convention – which is dedicated to religious education.  While the journal may be available to the general public, its content appears difficult to distinguish from a church bulletin or seminary catalog, items that also could be available to the general public.  In my view, paying for the printing of such a document could be viewed as governmental indoctrination and would have the effect of advancing religion, even if a portion of the journal is devoted to the secular purpose of promoting Maryland and Baltimore City as tourist destinations.  Thus, the Establishment Clause would not permit the State to pay for its printing.[9]

(3)  *Tote Bags and Tee-Shirts*.   You indicate that the appropriation might be used to pay for tote bags and tee shirts provided to convention attendees.  You state that these items will simply state the name, location, and date of the convention, but will be devoid of any religious symbols or sentiments.  The provision of such items might be justified if the State typically provides similar promotional items to individuals who attend conventions in the State.

(4) *President's Reception*.  You state that the Department of Business and Economic Development ("DBED") will co-sponsor an event entitled the "President's Reception" at which various public officials and NBCCE officials will welcome the attendees to the

---

[8] I understand that the proposed expenditure involves a subsidy as opposed to the purchase of an advertisement at market rates for a public purpose.

[9] I understand that the State has not paid for the printing of programs for other conventions Thus, I need not assess whether subsidizing that expense might be justified under *Rosenberger v. University of Virginia*, 515 U.S. 819 (1995) (student newspaper with Christian editorial viewpoint entitled to subsidy from student activity fund under university program extending benefits to "broad and diverse" groups).

State. You state that costs for this event include "invitations, postage, programs (which will include the following Order of Events: Greetings by NBCCE President and Local Host Committee Chair and Vice Chair, Presentations Given to Congress Presidents by NBCCE President, Review of the Week (Schedule), Thank-You Speech by NBCCE President, Introductions of Regional Vice Presidents, Acknowledgment of Guests, and Closing Remarks), book markers (non-religious with photo of Congress, Order of Events, and reminders for the week), signage (non-religious images and information), catering, decorations (flowers – non-religious), entertainment (atmospheric non-religious instrumental entertainment), souvenirs/mementos (speciality items with non-religious images and information), miscellaneous supplies and staffing (greeters/hostesses and security)."

I have been advised that DBED has held receptions on behalf of the State for convention groups in the past and has typically covered the costs of those receptions. Such expenditures may serve the secular purpose of promoting tourism and related economic development by welcoming visitors to the State, which is part of DBED's charge. However, I understand that the State has not funded receptions organized by the visiting group itself in the name of the chief executive of that group. Moreover, it is difficult to imagine that a reception organized by a religious organization as a key event at its religious education meeting would not focus on the goals and themes of the convention. Thus, State financial aid for such a reception would likely advance or favor religion or a particular denomination and would thus be unconstitutional. On the other hand, a welcoming reception by DBED that was designed to introduce convention visitors to the attractions of Baltimore and the State would have a secular purpose and, if provided on the same basis and criteria as past receptions for other convention groups, would not favor religion. Support for such a reception could be constitutional.

(5) *Lodging for Administrative Staff.* You indicate that a portion of the appropriation would pay for hotel rooms for the administrative staff of the NBCCE; this item would not include lodging for religious faculty.

Even though clergy personnel would apparently be excluded, this potential expenditure would directly support the staff who support the religious activities of the convention. Such an expenditure would be unrelated to any traditional public services. In addition, it is my understanding that the State has not paid for

lodging for staffs of other organizations that have held conventions in the State. It is not clear what secular purpose this expenditure would serve and it appears to advance the religious efforts of the NBCCE.[10] It apparently could not be justified even under the neutrality principle that some members of the Supreme Court have championed in recent cases. Thus, based on the information provided to date, such an expenditure of State funds would likely violate the Establishment Clause.

(6) *Convention Consultants*. Under this item, the State would pay the cost for logistical planning of the NBCCE, including the cost of an event planner, community outreach director, executive administrator, and a certified public accountant. You state these consultants are non-sectarian contractors. However, if I understand their duties correctly, the consultants are providing services to support the religious education meetings at the NBCCE, not to support State functions. They are essentially part of the NBCCE staff, except that they are temporary independent contractors rather than permanent employees. Funding of consultants to private entities is not a traditional service provided by government. Such funding would raise serious First Amendment concerns if provided to a church or religious organization, even if the consultants themselves or their support services are not sectarian.[11] Moreover, I understand that the State has never funded such services for any other convention, to the best of anyone's memory. For the same reasons explained with respect to the previous item, such an expenditure would likely violate the Establishment Clause.

---

[10] The NBCCE non-religious staff might be analogized to the platform that the City of Philadelphia constructed for the papal visit that was the subject of *Gilfillan v. City of Philadelphia*, 637 F.2d 924 (3d Cir. 1980), *cert. denied*, 451 U.S. 987 (1981), cited in the prior opinion. Though not a religious item in and of itself, the platform in Philadelphia was integral to the celebration of the papal mass and the city's support for its construction was barred by the Establishment Clause. The human platform of a capable staff is undoubtedly indispensable to the religious education work at an event like the NBCCE.

[11] For example, the State could not fund janitorial or plumbing services for a church, even if the janitor or plumber that the church hired happened to be an atheist or a member of a different religion.

*Summary*

In my view, expenditure of funds related to the foster parent and child event is likely to be constitutional; the expenditure of funds for the NBCCE souvenir journal, for the NBCCE President's reception, for lodging NBCCE staff, and for expenses of NBCCE contractors would likely be unconstitutional; whether the expenditure of funds for tote bags, t-shirts, and other types of receptions is permissible depends on whether the State provides analogous items to other conventions according to neutral criteria. Although the NBCCE is imminent, this Office remains available to review any additional proposals or information that you develop.

Very truly yours,

Robert N. McDonald
Chief Counsel
  Opinions and Advice